## Case No. 4,029.

### DOUGHTY v. WEST et al.

[2 Fish. Pat. Cas. 553.][1]

District Court, S. D. New York.   June, 1865.

PATENTS—VALIDITY OF REISSUE—PLEADING FRAUD —EQUITY JURISDICTION—ACTIONS AT LAW— IN- JUNCTION—PRACTICE—LIMITATION OF CLAIMS.

1. An allegation that a reissue was obtained under false representations should be made in distinct language, without equivocation; and, if relied upon at all, it should be the subject of very distinct proof.

2. An allegation, in relation to an action at law, ought not to be set up as any portion of the foundation of a proceeding in equity, unless there was a bona fide trial and complete judgment.

3. It is not necessary, however, in order to empower a court of the United States sitting in equity to pronounce judgment in favor of the patentee, that there should first be a trial at law.

4. The courts of the United States are authorized to take up a patent, and, upon final hearing, to pass upon it, without reference to the fact whether it has been before a jury or not.

5. In order to entitle the complainant to a preliminary injunction, there must be either: 1. Exclusive possession of some kind, by the patentee or his assignees; or, 2. There must have been a judgment at law, approved by the judge who tried the case; or, 3. There should have been a final hearing in equity, which is quite equivalent to a judgment at law, with the approval of the court.

6. Special notices in equity cases are irregular. The issue must be raised by the allegations in the bill and answer; and whenever either the bill or answer is defective, the defect must be cured by amendment, and can not be cured by special notices.

7. The reissued patent granted to James Draper, December 27, 1859, can not be extended any further than glue or cement, or some equivalent substances bearing a resemblance, both in their composition and character or manner of application, put on to make the hoops adhere to the pockets.

[8. Cited in Sarven v. Hall, Case No. 12,369, to the point that devices not described or specified may, if they are the invention of the patentee, be the subject of a patent, subject to all other rules governing the inventor's right; but it is not the office of a reissue to embrace them.]

This was a bill in equity, filed [by Samuel H. Doughty against Joseph I. West and James O. West] to restrain the defendants from infringing letters patent [No. 25,701] for "improvement in skeleton skirts" granted to James Draper and Samuel H. Doughty, assignees of James Draper, October 4, 1859, and reissued December 27, 1859 [No. 870].

The claim of the original patent was as follows: "The new manufacture of skeleton skirts described, in which the hoops B are secured by glue or equivalent cement, between separately woven parts of the tapes, in contradistinction to the stitched or clasped skirt when the parts are woven together as single tapes between the hoops, and separately as distinct tapes, at the points where the hoops are received."

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

The claim of the reissue was as follows: "I claim the new manufacture of skeleton skirts herein described, in which the hoops B are fastened between separately woven parts of the tapes, substantially as herein described, when the parts are woven together as single tapes between the hoops, and separately as distinct tapes at the points where the hoops are received."

The facts upon which the decision was based sufficiently appear in the opinion of the court.

Charles M. Keller, for complainant.
J. B. Staples, for defendants.

SHIPMAN, District Judge. In this case I will state very briefly the conclusion to which the court has come, after a full examination of the case by myself and Judge Nelson; and I may say that, from the first hearing of the case, so far as the patent was concerned, there has been, as there always is, in the mind of the court, a desire to sustain a patent securing an invention upon as broad a construction as is consistent with the rules which must determine the court in the construction of an instrument of this kind.

The case was originally heard under an objection to certain testimony that was taken after the filing of a notice of special matter, in the progress of this bill in equity; and it was more particularly, perhaps, with reference to the determination of that objection to the admissibility of the evidence, and the irregularity of the proceeding, that the reargument was ordered; although it was also ordered upon the whole case, including the construction of the patent. On the second hearing the objection to the introduction of the evidence under notice of special matter was waived. Of course, counsel have a right to waive their own objections; but whether, in the determination to be made, the court will regard such a waiver or not, it is not necessary to determine here; but we desire to say, so that there may be no misunderstanding, and that this proceeding may not be hereafter cited in support of such a course, that we regard the proceeding of filing notice of special matter as wholly irregular; that in all cases the issue raised in suits of this character must be raised by the allegations in the bill and answer, and whenever either the bill or answer is defective, the defect must be cured by amendment, and can not be cured by filing special notices. This is familiar practice, and one which must not be departed from, and reliance must not be placed by either the respondent or complainant upon the disposition of counsel to waive such irregularity. Such a course tends to produce confusion, to complicate the case, increases the labor of the court, and is a proceeding that can not be tolerated.

Now, with regard to the patent, as I have said before, the court has examined this matter very thoroughly, and with no lack of de-

sire to sustain the patent upon the construction which the complainant asks. But we find that to be impossible. We find that this patent, applying to it the most liberal rule of construction that we can, must be read and understood by the court to be a patent for a skeleton skirt of the character described, fastened in the loops or pockets by some kind of material put on in a soft state, and that subsequently becomes hard in the nature of glue or cement, or that class of substances which adhere by sticking; and which are put into the pocket, or on to the hoop within the pocket, and made to fix the hoop in rigidly, after hardening. And it is very clear that this patent must have been issued by the patent office with this intent, because no reliance is placed upon the loops in the perpendicular tapes, with the hoops fastened, except in this particular manner.

If the patentee, in this case, has made an invention of the character now claimed by him, nothing is more easy than to describe it in plain, simple, and unmistakable language; and there was not only no need, but it was highly improper, to put into this patent that part of the specification and claim, in connection with the drawings, which, by a fair interpretation, restricts the invention to a peculiar mode of fastening. We think the patent is very explicit on that. Now, if the invention is broad enough to include all skeleton skirts with the perpendicular tapes woven singly between the hoops, and woven double or with pockets for the reception of the hoops, then his patent should be reissued to cover that invention; and there is no possible difficulty about doing it. If there is something in the state of the art which will show that he is not the inventor to that extent, then he can obtain no such reissue. If he is the inventor of a skeleton skirt of that character, with the perpendicular tapes woven singly between the hoops, and woven double or with pockets for the reception of the hoops, which hoops are inserted either while in process of being woven, or after they are woven, and then fastened in any manner—there certainly can be no possible difficulty in describing, and it is the duty of the patentee to accurately describe it. It is true, one expert testifies that metal clasps are equivalent to glue or cement. We can not surrender our judgment to the opinion of the expert on that matter. If that is equivalent, then all modes of fastening must be equivalent; for stitching or riveting would be a mode of fastening just as analogous to glue and cement as metal clasps. Of course, it is not for us to speculate as to the reasons; but there must have been some reason which prevented the patentee from claiming his fastening, or making his claim so broad as that it could be construed to comprehend metal fastening of that rigid character.

Now, it is alleged by the respondents that the invention of the patentee did not em-

brace a hoop skirt manufactured in that manner, and fastened with clasps or rivets. We are not disposed to inquire into that matter, as we hold that the instrument is not broad enough to cover such an invention. We desire to keep our minds entirely free from any conclusion at all as to the extent of the invention; because, if the patentee invented and was the first to make a skeleton skirt, woven singly between the hoops, and double at the place of insertion of the hoops, fastened at the pockets—and that is the simple description of the invention claimed—then he was entitled to it; and we do not choose to speculate on any reasons which counsel for the respondents suggests that might cast a shadow on any title which the patentee may hereafter derive from the patent office. But, upon the construction of the patent as it stands (and, I may say, without reference to the singular language of the first patent), we can not extend it any further than glue or cement, or some equivalent substances bearing a resemblance, both in their composition and character, or manner of application, put on to make the hoops adhere to the pockets.

Now, that leaves the patent a patent for hoop skirts of that kind, fastened in that manner, by glue or cement, or some equivalent substances, without particularizing now what they may be, bearing an analogy to those two articles. It gives the patentee a right to the monopoly of that kind of manufacture. On the question of infringement of that, there is some evidence in the papers, although it is not very strong—at least, it is not beyond a reasonable doubt; still, on the whole, we think there is some evidence to sustain the allegation of infringement, and we grant an injunction against the defendants for the infringement of the patent, under the construction we have put upon it, with an order of reference to account. We have thus been careful not to either form or express any opinion upon the extent of the invention, because we are very well aware that it not very unfrequently happens that patentees, by mistake, limit the invention described, and make it narrower than the invention made. If that is the case, and it can be seen on the reissue of the patent that the invention extends beyond the construction the court gives it, it can be made the subject of trial hereafter. If the patentee has made the invention thus broadly claimed, it will hereafter present a simple issue for trial, as the patent can be made to cover it without difficulty. If not, then the patent properly describes his invention, and the judgment of the court is in entire accordance with the patent, as it now stands. I need hardly say that this matter has had a cautious and careful examination. We dislike to see any necessity for reissuing patents; for they are reissued now to such an extent as to perplex the courts and embarrass the public. I need hardly remark that